## MAITLAND ET AL. *v.* REED ET AL.

[No. 5,562. Filed March 15, 1906.]

1. CONTRACTS. — *Arbitration.* — *Finality of Decision.* — *Public Policy.*—A building contract requiring the parties to submit questions in dispute to the architect is valid, and such submission, or a valid excuse, is a condition precedent to the maintenance of an action, but a provision that such architect's decision shall be final is void as against public policy. p. 470.

2. SAME.—*Associations.*—*Decisions by Officers of.*—*Members.*—*Rights.*—Associations have the right to require all disputes as to the rights of members therein to be submitted for decision to the tribunal established thereby before resort to the courts. p. 472.

3. APPEAL AND ERROR. — *Weighing Evidence.* — *Statutes.* — The Appellate Court will not weigh conflicting oral evidence under the act of 1903 (Acts 1903, p. 338, §8). p. 474.

From Laporte Superior Court; *James F. Gallaher,* Special Judge.

Suit by Alexander J. Campbell against Francis E. Maitland and others. From a decree for plaintiff and for defendant John W. Reed, the other defendants appeal. *Affirmed.*

*L. L. Bomberger* and *Allen G. Mills,* for appellants.
*William J. Whinery,* for appellees.

ROBINSON, J.—Campbell, a subcontractor, sued the contractor and also the lot owners to recover an amount due him from the contractor and to foreclose a mechanic's lien. The contractor, Reed, filed a cross-complaint against the lot owners—appellants—to foreclose a mechanic's lien. The lot owners filed a cross-complaint against the contractor for damages for failure to comply with the contract.

So far as necessary to determine the questions presented, the facts found by the court are substantially as follows: On June 10, 1903, appellants contracted in writing with appellee Reed to construct a building, on lots owned by them, according to plans and specifications prepared by an

architect named, which contract is set out. Afterward, in August, 1903, Campbell contracted with Reed to do the plumbing, gas piping and sewer work for $385. The contractor did extra work and furnished extra material for which appellants agreed to pay, making the total amount Reed was to receive for constructing the building $4,929.26. Reed failed to construct the building, in certain particulars, according to the plans and specifications, and under the contract appellants removed such portions and reconstructed the same at an expense of $192.88. Reed received $4,000 from appellants in payment for labor and materials. Within sixty days after the work was done and material furnished Reed filed a notice of his intention to hold a lien, which was duly recorded. For extra work Campbell was to receive $20 in addition to his contract, making $405 which Reed agreed to pay him, of which amount Campbell has received $100. Campbell having failed to do a part of his work according to the plans and specifications, appellants, under the contract, removed and replaced the same at an expense of $183.88. Campbell filed a notice of intention to hold a lien, but facts are found showing that prior to that time he executed a waiver of his lien, in consideration of $385 paid him. A reasonable fee for appellee Reed's attorney was found to be $80.

As conclusions of law the court found: (a) That as between Campbell and appellants the law is with appellants; (b) that Campbell should recover from Reed $121.12; (c) that Reed should recover from appellants $736.38 and $80 attorney's fees, and have his lien foreclosed. Decree accordingly, and that each party to the suit should pay the costs which each has occasioned.

Appellant's filed a plea in abatement to Reed's cross-complaint, alleging the necessity, by the terms of the contract, of a reference to arbitration as a prerequisite to an action by Reed. The demurrer to this answer was properly sustained. The contract contains a pro-

vision that any controversy or dispute arising under the contract "shall be settled by the architect, whose decision shall be final and binding upon the parties hereto, except that in the case of a dispute as to the value of extra work or of work omitted, or of the amount of damages referred to in article five, either party may appeal from the architect's decision to arbitration in the following manner:" Either party desiring to arbitrate shall serve a notice on the other party, stating his grievance and his intention of appealing to a party therein named, or a substitute to be selected as specified, and such arbitrator shall have all the powers conferred on arbitrators by the statutes of Illinois, and his ruling shall be final and conclusive as to all questions submitted to him for arbitration.

The answer alleged that the expense incurred by appellants on account of the failure of Reed to comply with the contract had been audited by the architect and was in a sum named, that Reed had been notified thereof, and that he had not appealed from the architect's decision and had not resorted to arbitration as the contract provided.

The parties might properly agree that any controversy or dispute arising under the contract should be submitted for determination to the architect, and it must be shown that such a condition precedent was performed before bringing suit, or a valid reason shown for its nonperformance. But that provision of the contract which assumes to make the decision of the architect, or of an arbitrator, final, is void. It is not competent for parties to a contract, in advance of any dispute, to oust the jurisdiction of the courts by providing that the decision of a party therein named upon a dispute which might thereafter arise shall be final and conclusive. *Supreme Council, etc.,* v. *Forsinger* (1890), 125 Ind. 52, 9 L. R. A. 501, 21 Am. St. 196; *Louisville, etc., R. Co.* v. *Donnegan* (1887), 111 Ind. 179; *McCoy* v. *Able* (1892), 131 Ind. 417; *Supreme Council, etc.,* v. *Garrigus* (1885), 104 Ind. 133, 54 Am. Rep. 298;

*Bauer* v. *Samson Lodge, etc.* (1885), 102 Ind. 262; *Kistler* v. *Indianapolis, etc., R. Co.* (1882), 88 Ind. 460.

The contract does not require that the dissatisfied party shall appeal from the decision of the architect. It provides that either party may appeal, in certain matters, from the decision of the architect to arbitration.

This is a money demand upon contract, where either of the parties may wish to be relieved from the decision of the architect. In this respect it materially differs from such provisions in the by-laws of an association whereby it is sought to settle differences between the association and a member. In that class of cases one of the parties, the association through its proper officers, is the arbitrator, and good reasons suggest themselves for construing a doubtful provision concerning an appeal in favor of requiring an appeal by a member to certain officers of the association before resorting to the courts. "The policy of the law," said the court in *Bauer* v. *Samson Lodge, etc., supra,* "as declared in our Constitution and by our decisions, is freely to open the courts to those who seek money due them upon contract, and the party who asserts that the right to invoke the aid of the courts has been curtailed, must show a clear agreement abridging the right." See *Voluntary Relief Dept., etc.,* v. *Spencer* (1897), 17 Ind. App. 123; *Munk* v. *Kanzler* (1901), 26 Ind. App. 105.

It is argued by counsel that under the act of 1903 the court is required in an action of this character to review and weigh the evidence. The bill of exceptions containing the evidence occupies nearly six hundred typewritten pages of the record. Nearly all the evidence consists of the oral testimony of a number of witnesses. Section eight of the act approved March 9, 1903 (Acts 1903, p. 338, §641h Burns 1905), provides: "In all cases not now or hereafter triable by a jury, the Supreme and Appellate Courts shall, if required by the assignment of errors, carefully consider and weigh the evidence and ad-

missions heard on the trial when the same is made to appear by a bill of exceptions setting forth all the evidence given in the cause, and if on such appeal it appears from all the evidence and admissions that the judgment appealed from is not fairly supported by, or is clearly against the weight of the evidence, it shall be the duty of such court to award judgment according to the clear weight of the evidence, and affirm the judgment or return said cause to the trial court with instructions to modify the judgment or to grant a new trial; or to enter such other judgment or decree as to such court of appeal may seem right and proper upon the whole case." The above provision of the statute was very fully considered by the Supreme Court in the case of *Parkison* v. *Thompson* (1905), 164 Ind. 609, and the conclusion there reached was that it was not the intention of the legislature that there should be a trial *de novo* in the appellate tribunal upon the evidence in the case, nor was it contemplated in the passage of the act that we should take up and examine oral evidence and pass upon its weight without reference to the decision of the trial court, or the means afforded that tribunal for deciding questions of fact. In the opinion in that case, the court, by Jordan, J., said: "In passing upon questions of fact, under the act in question, which depend upon oral evidence given before the trial court, we must take into consideration, not only the evidence in the record, but also the means and tests afforded the trial court for determining the credibility of the witnesses, and the weight to be accorded to their testimony. We must consider and give effect to all inferences and impressions that might have been reasonably deduced by the trial judge by reason of the fact that he saw and heard the witnesses testify, and had the opportunity, by personal observation, to discover any signs of truth or falsehood in respect to their testimony. In a cause where a question of fact or facts depends upon oral testimony for support, and there is a substantial conflict

in the oral evidence, under such circumstances, we will not undertake to reconcile the conflicting evidence, for it must be obvious from the position which we occupy that to endeavor to do so would be virtually useless. Were we to attempt, under such circumstances, to reconcile and weigh the evidence, and interpose our judgment in the case for that of the lower court, great injustice might result. *Pollock* v. *Carolina, etc., Assn.* [1897], 51 S. C. 420, 29 S. E. 77, 64 Am. St. 683, and cases there cited. Certainly absurdity ought not to be imputed to the statute by holding that it contemplates that this court, under conflicting oral testimony, should weigh the evidence contained in the record, and determine questions of fact depending thereon."

In the case at bar there is a sharp conflict in the evidence upon the material facts at issue between the owners of the building and the contractor. In a case involving many items, extra work and material, and changes in the original contract, it would be expected, as was the case here, that there would be some conflict of opinion among candid witnesses well informed as to the matters about which they testified. Upon a careful consideration of the evidence we can not say that there is not sufficient evidence fairly to support the conclusion reached by the trial court. There is evidence in the record to support the findings of fact, and, while the findings are not as full in some respects as they might have been, yet they are sufficiently full to authorize the conclusions of law as announced by the court. We can not say that we would, from the evidence, have found the facts in all respects as the trial court did; but whether we would or would not have done so is not material, where it must be said that there is evidence in the record supporting the findings as announced by the court. The question is not what conclusion we would have reached from the testimony introduced at the trial, but whether there was evidence authorizing the trial court to reach the conclusion it did.

Judgment affirmed.