## AMERICAN TYPE FOUNDERS, Inc., v. LANSTON MONOTYPE MACH. CO.

### No. 8148.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 4, 1943.

Decided Aug. 4, 1943.

Martin M. Reed, of Brooklyn, N. Y., for appellant.

Francis S. Bensel, of New York City (Larkin, Rathbone & Perry, of New York City, and Donahue, Irwin & Gest, of Philadelphia, Pa., on the brief), for appellee.

[20] Cf. Cords v. Coil Mfg. Co., supra; L. McBrine Co. v. Silverman, supra.

Before BIGGS, JONES, and GOOD-RICH, Circuit Judges.

BIGGS, Circuit Judge.

The plaintiff, American Type Founders, Inc., is engaged in the business of designing and manufacturing type. The defendant, Lanston Monotype Machine Company, manufactures and sells monotype machines and matrices for use with such machines. The plaintiff filed a complaint pursuant to the provisions of the Federal Declaratory Judgments Act, Act of June 14, 1934, 48 Stat. 955, as amended, 28 U.S.C.A. § 400, seeking an adjudication as to whether it could terminate upon reasonable notice a contract made by it with the defendant which failed to specify a definite term or to prescribe conditions which should determine its duration. Under the contract referred to, which was dated December 1, 1925, the plaintiff granted to the defendant a non-exclusive right to manufacture matrices of all sizes of all the type faces designed by the plaintiff and not produced by the defendant prior to the date of the agreement. The defendant agreed to pay a fixed royalty for each matrix manufactured by it under the contract. At the time the contract was made a number of the plaintiff's type faces were covered by design patents, all of which were due to expire prior to January, 1935.

On December 28, 1938, the plaintiff notified the defendant that the agreement had been cancelled. The defendant refused to recognize the attempted cancellation. The plaintiff then wrote a letter dated August 15, 1939, stating that it would permit the defendant to sell until December 31, 1939, the type faces which it had in stock. The defendant reiterated its refusal to recognize the cancellation. Since January 1, 1940, the defendant has tendered to the plaintiff checks to cover the royalties on type faces which it has sold pursuant to the terms of the contract. The plaintiff has not cashed these checks. Since the defendant is seeking to enforce the contract no question of lack of consideration can arise because of the fact that type faces are not now covered by design patents. York Metal & Alloys Co. v. Cyclops Steel Co., 280 Pa. 585, 124 A. 752. We entertain no doubt that an actual controversy exists within the purview of the Declaratory Judgments Act. See Dewey & Almy Chemical Co. v. American Anode, Inc., 3 Cir., 137 F.2d 68, and the authorities therein cited.

Since no proof was offered either as to the place of execution or the performance of the contract the court below correctly applied the law of the forum.[1] See Black & Yates v. Mahogany Ass'n, 3 Cir., 129 F.2d 227, 233. While the Black & Yates case dealt with an attempt to enjoin a tort and the action at bar is one which could have been tried to a jury, we, none the less, can perceive no lack of application of the principle stated. See the decisions of the Appellate Court of Indiana in Bombolaski v. First Nat. Bank, 55 Ind.App. 172, 101 N.E. 837, 103 N.E. 422, and Baltimore, O. & C. Ry. Co. v. Scholes, 14 Ind.App. 524, 43 N.E. 156, 56 Am.St.Rep. 307. See, also, 17 Corpus Juris Secundum, Contracts, § 581.

The court below held that the failure of the parties to insert a date of termination in the contract indicated that the parties intended that the contract should not be terminated save by mutual consent. D.C., 45 F.Supp. 531. It is the law that findings of fact shall not be set aside unless clearly erroneous. See Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the decisions of this court in Smoley v. New Jersey Zinc Co., 3 Cir., 106 F.2d 314, and in Wald v. Longacre, 3 Cir., 34 F.2d 25. The finding of fact made by the District Court is not only not erroneous but finds clear support in the evidence.

The plaintiff contends that the contract is clear upon its face, presents no ambiguity and that, therefore, no parol evidence of the intention of the parties should have been received by the trial court, citing, inter alia, Gianni v. R. Russell & Co., 281 Pa. 320, 126 A. 791, and Shoemaker v. Mt. Lookout Coal Co., 270 Pa. 432, 437, 113 A. 410, 412. It should be borne in mind, however, that the appeal in the case at bar presents, as the learned District Judge pointed out, " * * * the unusual situation of a plaintiff complaining not that the defendant has failed to

---

[1] The allegation of the petition that the contract was executed in New Jersey was denied in the answer. No proof on this subject was offered. On appeal, the parties have not disputed the application of the law of the forum but, on the contrary, have confined themselves to the interpretation of Pennsylvania law.

comply with the contract between them but that defendant insists upon complying with it after notification by the plaintiff that the contract has been terminated." [45 F.Supp. 532] Without reference, however, to this unusual situation we think that where a contract does not expressly provide for its termination that the court may receive evidence as to the intention of the parties. Certainly evidence was received in Slonaker v. P. G. Pub. Co., 338 Pa. 292, 13 A.2d 48, and in Nolle v. Mutual Union Brewing Co., 264 Pa. 534, 108 A. 23. Indeed, even in the dissenting opinion in the Nolle case the three dissenting justices did not indicate that parole evidence was not to be received by the trial court. The dissenting justices in fact relied upon parole evidence in their dissent. In Machen v. Budd Wheel Co., 294 Pa. 69, 77, 143 A. 482, 485, the Supreme Court of Pennsylvania, in discussing a contract for personal service which contained no provision for termination, stated, " * * * precedents do not cut a great figure in such an inquiry * * *. They are like precedents in will cases. * * * The language used in each instance is different, and so are the circumstances." In the Machen case, as in the other cases which we have cited, the court below received extensive parole evidence in an attempt to ascertain the intention of the parties. In substance the decisions of the Pennsylvania courts treat a contract which contains no provisions as to termination as if that contract contained a patent ambiguity. It follows that the contention of the plaintiff that the trial court should not have received parole evidence of the intention of the parties as to the duration of the agreement cannot be sustained.[2]

██ The contract 'was in the nature of a license agreement at least insofar as the plaintiff's type faces were covered by patents. Ordinarily the rule of law in respect to a patent license is that where no term is cited in the license the license will be deemed to extend throughout the life of the patents covered by the agreement. 2 Walker on Patents (Deller's Edition) § 390. But in the case at bar such patent rights as the plaintiff had expired long before the attempted cancellation and the plaintiff continued to receive the consideration stipulated by the contract. Obviously, therefore, the ordinary rule which is applied to license agreements which contain no term is negatived.

██ It clearly appears also that a continuing performance under the contract was contemplated by both parties. The defendant was required to expand substantial sums of money in manufacturing and maintaining a complete inventory for its customers of matrices upon which were pressed the type faces manufactured by the plaintiff.[3] It is very difficult to believe that it was the intention of the de-

[2] The rule that where a contract does not specify a definite term or prescribe conditions which will determine its duration it may be terminated by either party at will, is particularly applicable to contracts for personal service. See 4 Williston on Contracts (Revised Edition 1936) § 1027(a); 12 Am.Jurisp. § 305; Slonaker v. P. G. Pub. Co., supra; Machen v. Budd Wheel Co., supra; Weidman v. United Cigar Stores Co., 223 Pa. 160, 72 A. 377, 132 Am.St.Rep. 727; Fay Gas Fixture Co. v. Welsbach Light Co., 189 Pa. 20, 41 A. 980. Even in regard to contracts for personal service, however, the rule is not inflexible. See 1 Williston, supra, § 38. The Pennsylvania cases repudiate the doctrine that a contract which does not specify a definite term is terminable at will except as to contracts for personal service. See Rossmassler v. Spielberger, 270 Pa. 30, 112 A. 876; Nolle v. Mutual Union Brewing Co., supra.

[3] The nature of the business of the respective parties is expressed succinctly by the District Court at 45 F.Supp. 531, at page 533, where Judge Bard stated, "In order to obtain a proper understanding of the nature and subject matter of the contract in the present case it is necessary to examine into the businesses conducted by the parties at the time of the execution of the contract. Plaintiff was and is a 'type founder', and its business consists in the designing and manufacturing of various type 'faces' or styles of letters and other characters used in printing. The defendant is engaged in the manufacture and sale of Lanston 'monotype' machines and matrices for use thereon. A 'monotype' machine is an intricate device which casts and assembles type for use by printers. A matrix is a metal mold containing a negative of a character into which molten type is forced by the monotype machine to create a single piece of type. The process by which a particular style of type is embedded in a matrix consists of a number of somewhat complex operations but ultimately it involves the

fendant to put itself in a position where the plaintiff could deprive it of the use of the inventory at any time. As was said by the Supreme Court of Pennsylvania in Rossmassler v. Spielberger, 270 Pa. 30, 41, 112 A. 876, 880, quoting from Ruling Case Law, "Apart from contracts which, from their inherent nature, imply a power of revocation, it would seem that the intention of the parties to an agreement that it should be perpetual and without limit as to duration could not be more properly expressed than by silence as to any time limit or power of revocation." [4]

The judgment of the court below will be affirmed.

manufacture of a 'punch' for each character of that style which is driven under terrific pressure into a piece of metal to form the matrix. Defendant supplies these matrices to persons to whom it has sold its monotype machines and keeps a large inventory available to replace matrices lost or damaged by its customers. It likewise keeps matrices of various sizes in each style in order to supply the needs of such customers."

[4] In Coffin v. Landis, 46 Pa. 426, relied on by the plaintiff, the contract was one for personal service.