The WARNER & SWASEY COMPANY, a Michigan Corporation, Plaintiff,

v.

SALVAGNINI TRANSFERICA S.p.A., an Italian corporation, and Guido Salvagnini, Defendants.

No. CIV–85–275C.

United States District Court, W.D. New York.

April 28, 1986.

Saperston, Day, Lustig, Gallick, Kirschner & Gaglione (Tricia Thomas Semmelhack, of counsel), Buffalo, N.Y., Cullen, Sloman, Cantor, Grauer, Scott & Rutherford (Thomas K. Ziegler, of counsel), Detroit, Mich., and The Cross & Trecker Corp. (Raymond J. Eifler, of counsel), Bloomfield Hills, Mich., for plaintiff.

Moot & Sprague (Michael A. Brady, of counsel), Buffalo, N.Y., and Schnader, Harrison, Segal & Lewis (Gary A. Kimmelman, and Saul Sherman, of counsel), New York City, for defendants.

CURTIN, Chief Judge.

Defendant Salvagnini Transferica S.p.A., an Italian corporation, is the owner of two United States patents for automatic bending machines, including a line called the "Multi-bend P–4" model. Defendant Guido Salvagnini, who owns and controls the corporate defendant, is the patentee and inventor of these patents.

On September 28, 1979, defendants entered into a license agreement with plaintiff's predecessor, Warner & Swasey Company, an Ohio corporation. This agreement gave plaintiff's predecessor an exclusive license to manufacture, use and sell machines covered by the defendants' patents in the "licensed territories" of North, Central and South America and Japan. From 1980 through 1984, plaintiff's predecessor went through a series of corporate mergers and acquisitions. At all times, the license agreement was held by the Wiedemann Division of the Warner & Swasey Company. In April of 1984, the company was acquired by Cross & Trecker Corporation. In May of 1984, defendants sent a notice of termination of the license agreement to Warner & Swasey Company, now a Michigan corporation, plaintiff in this action (see affidavit

of Noel H. Ashworth, General Manager of the Wiedemann Division, Item 11, Exh. A).

In this action, plaintiff alleges that defendants are infringing the patents, for which plaintiff claims to retain an exclusive license by virtue of the licensing agreement, by selling and offering to sell machines covered by the patent in the United States. Jurisdiction is premised on 28 U.S.C. § 1338(a), granting district courts jurisdiction in patent actions; 28 U.S.C. § 1332, diversity of citizenship; and 28 U.S.C. § 2201, the Declaratory Judgment Act.

Defendants have moved to dismiss the complaint, pursuant to Rules 12 or 56 of the Fed.R.Civ.Pro., on two grounds: (1) plaintiff has no rights under the licensing agreement because it was assigned to plaintiff without the prior written consent of the defendants, as required by the terms of the agreement; and, in the alternative, (2) the licensing agreement provides that plaintiff may only bring suit to enforce any rights he may have under the agreement in Vicenza, Italy. Plaintiff has had full opportunity to respond.

For the reasons below, I find that plaintiff is bound by the forum clause in the licensing agreement to bring this action in Italy. In light of this, defendants' first ground for dismissal will not be addressed, summary judgment is granted to defendants on the second ground, and the complaint is dismissed.

The threshold issue is the applicability of the choice of forum clause. Plaintiff contends that the choice of forum clause, by its terms, covers only suits for breach of contract. Since the cause of action pleaded is patent infringement, plaintiff claims the choice of forum clause does not apply to this case.

Article XVIII of the licensing agreement contains the choice of forum clause agreed to by the parties:

In the event either party intends to file suit against the other on the basis of an alleged breach of this Agreement, or any provision thereof, such party shall notify the other party at least two months be-

fore such suit is instituted, stating its intentions and the basis of the proposed action. Both parties agree to use their best efforts during the two month period to try to resolve their differences and avoid the litigation. Any suit brought by Salvagnini shall be brought in Cleveland, Ohio; any suit brought by W & S shall be brought in Vicenza, Italy.

Defendant Salvagnini filed an affidavit setting out his belief that *any* suit brought by his company would be brought in Ohio while *any* suit brought by plaintiff would be brought in Italy (Item 6, p. 2). A simple reading of Article XVIII would indicate that any suit arising between the parties out of their contractual relationship would be covered by the agreement.

However, plaintiff maintains that "any suit" refers only to actions based on a breach of the agreement or any of its provisions, as set forth in Article XVIII. Plaintiff argues that under this reading, a suit for patent infringement would not be covered by Article XVIII (*see* affidavit of Noel H. Ashworth, Item 13, Exh. A).

■ Since this is a motion for summary judgment, it would be inappropriate for the court to choose between two reasonable, but differing, interpretations of Article XVIII (*see Ward Company v. Stamford Ridgeway Associates,* 761 F.2d 117, 120 (2d Cir. 1985). Even taking plaintiff's more restrictive reading, however, the choice of forum clause still applies to this action.

■ Although the cause of action pleaded is patent infringement, this action is ultimately based on alleged breach of the licensing agreement by defendants. In Article II of the agreement, defendants grant plaintiff an exclusive license to make, use or sell the machines covered by the patents in specified territories. Without this exclusive license, plaintiff would have no rights in the patents. Without a breach of Article II by defendants, there would be no infringement by defendants. If defendants have infringed the patents by selling ma-

chines in the licensed territory, as plaintiff claims, they have also breached Article II.[1]

Under either defendants' or plaintiff's reading, the choice of forum clause set out in Article XVIII applies to this action.

Plaintiff makes several arguments against requiring it to sue in Italy, in accordance with the choice of forum clause. Plaintiff claims that jurisdiction in patent infringement suits rests exclusively with United States district courts, 28 U.S.C. § 1338(a), so that an Italian court would not have jurisdiction to hear the case. Plaintiff also urges that even if an Italian court has jurisdiction, the U.S. patent laws are too complex to be addressed by a foreign court.

Defendants respond by pointing out that the federal courts have patent jurisdiction exclusive of *state* courts, not foreign courts. They also point to a line of cases in which litigation or dispute resolution in a foreign forum agreed to by the parties is enforced—even in cases involving unique or complex American law.

■ In urging that this court has jurisdiction exclusive of an Italian court, plaintiff relies on 28 U.S.C. § 1338(a). That section provides that federal district courts have original jurisdiction in civil actions arising under the patent laws, and that "[s]uch jurisdiction shall be exclusive of the courts of the states ..."

Plaintiff points to *Diematic Mfg. Corp. v. Packaging*, 381 F.Supp. 1057 (S.D.N.Y. 1974), *appeal dismissed*, 516 F.2d 975 (2d Cir.1975), *cert. denied*, 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975) in which the court held that patent infringement claims may be heard only by federal courts, not arbitrators (or state courts). However, the force of the *Diematic* case has been undercut by statute, 35 U.S.C. § 294.[2] It has also been effectively overruled by *Mitsubishi·Motors Corp. v. Soler Chrysler-*

*Plymouth, Inc.*, —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), which held that *American Safety Equipment v. J.P. Maguire & Co.*, 391 F.2d 821 (2d Cir.1968), on which the *Diematic* court relied heavily, does not apply in the international context.

Plaintiff also points to cases in which a claim of patent infringement is raised between a licensee of a patent and his licensor. In *Air Products and Chemicals, v. Reichhold Chemicals, Inc.*, 755 F.2d 1559 (Fed.Cir.1985), the court found that the complaint properly stated a claim and sought relief under the patent laws. Federal subject matter jurisdiction was not defeated by the fact that questions of contract law would necessarily have to be decided. Similarly, the court in *Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268 (Fed.Cir.1985), found that simply because a patent dispute arises between licensee and licensor does not mean that the cause of action arises in contract rather than patent so as to deprive a federal court of jurisdiction.

In the instant case, plaintiffs properly seek relief for patent infringement and this court has jurisdiction exclusive of the state courts. However, in light of *Mitsubishi, supra* and a line of cases preceding it, this jurisdiction is not exclusive of other forums in the international context. *See also, Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974).

Plaintiff also claims that the U.S. patent laws are too complex to be applied by a foreign court. However, in the context of international business transactions, choice of forum clauses has been favored by the courts, even in cases involving complex American statutes.

The Supreme Court has established a general policy favoring choice of forum clauses in the context of international business. *The Bremen v. Zapata Off-Shore*

---

1. Of course, if plaintiff sued a third party for infringement, he could sue in *any* appropriate forum (Art. VII of agreement), since no breach of the agreement would be involved.

2. 35 U.S.C. § 294 provides that a contract involving a patent or a right under a patent may contain a provision requiring arbitration of disputes concerning patent validity or infringement. The law was enacted on August 27, 1982 and became effective six months later.

*Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In that case, a German and American corporation had contracted for one to tow the other's drilling rig from Louisiana to Italy. The choice of forum clause provided that "any dispute arising must be treated before the London Court of Justice." The Court concluded that, in admirality actions, such clauses are prima facie valid unless enforcement would be unreasonable under the circumstances. *Id.* at 10, 92 S.Ct. at 1913. The elimination of uncertainty as where suit would be tried and the effectuation of the intent of the parties were two important concerns.

*The Bremen* has been cited with approval in *Scherk*, 417 U.S. at 518–19, 94 S.Ct. at 2456–57, and *Mitsubishi*, 105 S.Ct. at 3355. In *Scherk*, an American corporation purchased several businesses organized under the laws of Germany and Liechtenstein from a German citizen. It was agreed by the parties that any dispute arising from the agreement or its breach would be arbitrated in Paris, France, and the court enforced this provision in a suit based on the securities laws, specifically § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. Similarly, in *Mitsubishi*, a Japanese corporation and a Puerto Rican corporation had agreed that all disputes arising out of or relating to a contract for the sale of cars in Puerto Rico would be handled by arbitration in Japan. The court ordered arbitration of the antitrust claims.

It is important to note that in both *Scherk* and *Mitsubishi*, the holdings rested in large part on the Arbitration Act, 9 U.S.C. § 1 *et seq.*, which sets forth federal policy favoring arbitration agreements. The Arbitration Act has no application in the instant case. However, the policy of enforcing choice of forum provisions also played a significant part. As the court in *Mitsubishi* stated:

> *The Bremen* and *Scherk* establish a strong presumption in favor or enforcement of freely negotiated contractual choice-of-forum provisions. Here, as in *Scherk*, that presumption is reinforced by the emphatic federal policy in favor of

arbitral dispute resolution.... Moreover, the party may attempt to make a showing that would warrant setting aside the forum-selection clause—that the agreement was 'affected by fraud, undue influence, or overweening bargaining power,' that 'enforcement would be unreasonable and unjust,' or that proceedings 'in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court.' *The Bremen*, 407 U.S., at 12, 15, 18 [92 S.Ct., at 1914, 1916, 1917]. But absent such a showing ... there is no basis for assuming the forum inadequate or its selection unfair.

*Mitsubishi*, 105 S.Ct. at 3356–57.

■ In the instant case, there is no evidence of fraud, undue influence or overweening bargaining power. On the contrary, the reciprocal nature of the clause is clear: if plaintiff brings a suit of the type covered by the forum selection clause, he shall sue in Italy. If the defendant brings such a suit, he shall sue in Ohio. This clause was clearly designed by the parties to place the burden of travel on the party who initiated the lawsuit. According to Mr. Salvagnini, this was an important aspect of the agreement (*see The Bremen*, 407 U.S. at 14, 92 S.Ct. at 1915).

Nor is the choice of forum clause "unreasonable" so as to make the clause unenforceable (*see The Bremen* at 16, 92 S.Ct. at 1916). This is an international agreement with many potential forums. Defendants are Italian, plaintiff corporation is American. The agreement gives plaintiff the right to sell or use the machines covered by the patent in North, Central or South America, and Japan (*see* Articles I and II of the agreement). In this case, no court is the obvious place for suit, as was the Dutch forum selected by the parties in *AVC Nederland B.V. v. Atrium Inv. Partnership*, 740 F.2d 148 (2d Cir.1984). As in *The Bremen*, the forum clause here gives some certainty as to the cite of a suit between the parties. The agreement also provides some certainty about the law to be

applied: the agreement is to be governed by the laws of Ohio (article XVII of the agreement).

■ Plaintiff claims, however, that an Italian court would have difficulty applying complex U.S. patent law. This argument is not persuasive, particularly on the facts of this case. Although the patent laws are complex, there is no reason to believe that an Italian court would be any less capable of applying them than the International Chamber of Commerce in Paris, France would be in applying the securities law (*Scherk*) or the Japan Commercial Arbitration Association hearing a case involving the anti-trust laws (*Mitsubishi*).

Additionally, there are contract issues in this case which must be decided. If the Italian court finds that the agreement was improperly assigned to plaintiff or that defendant properly terminated it in May of 1984, there would be no need to address any patent issues: there could be no infringement. On the other hand, if the Italian court found for plaintiff on these issues, it is unlikely that an Italian court would be required to delve into issues of patent validity, since the defendants, as ultimate owners of the patents, would be unlikely to argue that they are invalid. The Italian court might be faced with the issue of whether the machines allegedly being sold by defendants infringe the patents. At the present time, this issue is not contested by defendants.

On the basis of the choice of forum clause in the licensing agreement, plaintiff has sued in the wrong forum. Summary judgment is granted to defendants and the complaint is dismissed.

So ordered.